## PIERCE v. WOOD & a.

Where a count in a declaration was for money had and received, and under it a specification of a claim for the amount of three notes was filed, and the plaintiff subsequently moved to amend the specification, by adding a claim for the balance of another note which had been given for the three — *held*, that the identity of the cause of action would not be changed by the amendment, and that the motion should be granted.

A contract, which may itself be the foundation of an action, may also be competent evidence in an action not brought upon it. And where an action for money had and received was instituted, founded upon fraud in a compromise, to recover the balance alleged to be due, and which had been remitted by the compromise, and the defendants reduced to writing, the terms upon which the settlement was made, and engaged with the plaintiff and others, in case of any fraud committed by them, that they would repay the balance — *held*, that the writing was evidence competent to be used in such an action, as tending to show the fraud.

The acts and sayings of one member of a firm, in the general partnership business, done or said within the scope of that business, will govern the firm, whether honestly, or dishonestly transacted or said.

Where A. and B., partners in business, made a compromise of their debts, and transferred their property to pay a certain per cent. thereon, upon being discharged for the balance, and at the same time agreed, that any fraudulent representation, or concealment of property, should revive the claim for the balance, and during the negotiation, one of the partners, without the knowledge of the other, made statements relative to some of the property conveyed, tending to show fraud — *held*, in an action against both, to recover the balance on the ground of fraud, that these statements were competent evidence.

We have no established rule, in this State, which requires a party to introduce all his evidence, except such as is properly rebutting, before he rests his case. Such a course is recommended by the court, but not insisted upon; and the better practice generally is, for each party to put in his whole case before stopping.

If a person effect a compromise of his debts, by fraudulent representations, and procure a discharge of the same, by paying a per cent. thereon, and an action be brought to recover the balance, on the ground of fraud, it is not necessary, as preliminary to the right of recovery, that the plaintiff repay or offer to repay the per cent. received. The doctrine of the rescission of contracts does not apply to such a case.

Where a verdict has been returned for a sum in damages too large, but the excess can readily be ascertained by arithmetical computation, and the plaintiff will remit the excess, judgment will not be arrested.

ASSUMPSIT, for money had and received. The specification described the claim as founded on three promissory notes signed by the defendants and payable to Chapman and Pierce, or order, in four months from date. The defence was that these notes were paid by a new note subsequently made, and agreed to be accepted in discharge of them.

A witness for the defendants testified, that in October, 1845, the defendants, being as they alleged in failing circumstances, applied to their creditors in Boston, for a compromise of their

claims; that it was judged proper, that an attachment should be made upon the stock in trade, and property of the defendants, to prevent others from attaching and defeating such compromise; that as the notes of the defendants to the plaintiff and two of the principal creditors were not due, it was agreed between them and the defendants, that new notes should be made for these debts payable on demand, and the old notes should be given up; that in pursuance of this agreement, the defendants made to the plaintiff a new note for $1250, the amount estimated to be due, (but which was in fact, a little more than was actually due,) and that the original notes, not being at hand, were not given up to the defendants.

. On the new notes given to the plaintiff and the other two creditors, suits were brought, and the property of the defendants attached, and when the compromise was effected, the notes were given up, and the suits abandoned.

The plaintiff then moved to amend his specification as follows: " The plaintiff, as surviving partner of the late firm of Chapman & Pierce, claims to recover in this suit, the sum of seven hundred and ninety-five dollars and interest thereon, from October 21, 1845, being the balance due on a certain promissory note of that date, made payable to said Chapman & Pierce, or order, for the sum of $1250, on demand, and interest — the said last named claim being for the same cause of action as set forth in the three preceding specified promissory notes."

The defendants objected to the amendment, that it introduced a new cause of action, and that it was not sufficiently specific, but the amendment was allowed.

The defendants then contended, that on the twenty-fifth of October, 1845, a compromise was made between them and Chapman & Pierce, and Messrs. Amidown & Howe, acting for themselves and the other Boston creditors, by which the defendants gave up to the creditors their stock in trade, notes and accounts, and Wood conveyed certain real estate, the value of all which, was estimated at thirty-three and one third per cent., of the debts due at Boston, and Chapman & Pierce and other Boston

creditors, accepted the same, in full satisfaction and discharge of their respective claims.

The plaintiffs replied, that this alleged compromise, was based upon, and induced by certain representations made by the defendants relative to the amount and situation of their property, which were false, and were then known to the defendants to be so, and was therefore void; and that at the time of making the same compromise, it was agreed in writing between the said Chapman & Pierce and others, and the defendants, that if the representations made by the defendants, were fraudulently false, or if property was concealed by them to the amount of $100, the claims of the creditors should be revived and be in full force.

The contract was dated October 25th, 1845, and was signed and sworn to, by the defendants — no other signature was attached to it. It set forth that Plumer P. Wood, and Daniel W. Quimby, the defendants, had completed an arrangement with Thomas W. Pierce, Holmes Amidown, and William A. Howe, all of Boston, and with other creditors of Wood & Quimby, whom Pierce, Amidown and Howe represented, for the discharge of about ten thousand dollars of demands against Wood & Quimby, at a deduction of sixty-six and two thirds per cent., which deduction was founded on an exhibition made by Wood & Quimby of all the property in their possession or control, and all to which they had any right, title, interest or claim, jointly or severally. The contract then contained a detailed statement of the property exhibited, consisting of their stock of goods in the store, their book accounts and notes; also, the right which Wood had to redeem certain real estate in Somersworth, being mortgaged to Enoch Wood for a certain sum, and also to Leonard S. Hill. It then states that the sums set forth in the mortgages were actually received of Enoch Wood and Leonard S. Hill, and that Plumer P. Wood was then indebted to them for the same. It closes in these words: " We the said Wood & Quimby have given a true and just exhibition of all the property or claims which we jointly or severally have in our possession or control; and should it ever appear that we have in any manner fraudulently secreted, or covered up, kept back, or concealed, from

the said Pierce, Amidown and Howe, any property, or claims, not here exhibited, to the amount of one hundred dollars, we hereby acknowledge, revive and restore to them the full claim upon us for the balance, which they have this day relinquished to us—amounting to about seven thousand dollars—including the claims of the said Pierce, Amidown and Howe, and also the claims of those which they represent; and should it ever appear, that we, the said Wood & Quimby, or either of us, should ever receive, either directly or indirectly, from any source, as the proceeds of any goods, wares, moneys, or merchandise, which we have fraudulently concealed or kept back, we hereby agree to restore to them, the full amount thus received. And we further declare and certify, that we or either of us, have not any knowledge of any money, property, or claims, not fully represented and shown to the said Pierce, Amidown and Howe, as herein specified; and that we, or either of us, are unable to pay any larger amount to said Pierce, Amidown and Howe, and those whom they represent, than the property which we have thus exhibited will pay." The defendants objected to the admission of this contract, because it was made between them and the plaintiff, and other persons not parties to this action, and because it should have been the foundation of an action, and should have been specially declared on; but the court admitted it.

The plaintiff contended, and introduced evidence to prove that the mortgage of the real estate conveyed by Wood for the benefit of the creditors, was fraudulent; and to establish the fact, he proposed to show that Quimby, the other defendant, who had no interest in this real estate, and was not in any manner a party to said mortgage, had stated at the time of the negotiation for the compromise and while it was going on, and when Wood was not present, that the mortgage was fraudulent and nothing was due upon it, and that the witness was thus induced to foreclose, and take a conveyance of the right in equity to redeem said real estate, and pay therefor, three and one-third per cent., towards the thirty-three and one-third per cent., towards the compromise. The defendants objected to this evidence, but it was admitted.

The plaintiff proposed to enquire, what the plaintiff and Howe,

after the agreement of compromise had been made, and the writings, including the written contract, were drawn, but before they were executed, declared to be the purpose, for which they wanted that contract, and the course they would take, if it were not executed. The defendants excepted to this evidence, but it was ruled admissible.

The plaintiff, after introducing evidence to show the mortgage to be fraudulent, rested his case. The defendants then offered as a witness, Hill, the mortgagee, who testified that he had advanced to Wood $1375, the amount of his mortgage, at several times before October, 1845, when he took the mortgage, and had paid for the equity of redemption, $450; and that he sold the property to a brother-in-law of Wood. The plaintiff, after cross-examining Hill, offered the deposition of Enoch Wood. To this the defendants objected, because it was evidence in no way rebutting the evidence of the defendants, but should have been offered at first, and before the plaintiff rested his case. But the court allowed the deposition to be read, subject to the exception. The deposition might here be introduced, but it is not deemed necessary, in the decision of the case.

The court charged the jury, that if they found the note of $1250, was given and accepted, in discharge of those described in the original specification, they should lay the latter out of the case; and that if they found the compromise avoided by fraud, they should find their verdict for the balance of the $1250 note; though the defendants requested the court to instruct the jury, that in that case, they should return their verdict for the defendants.

The defendants requested the court to charge the jury, that partners are not as such, agents of each other, in committing frauds and breaches of trust; but the court instructed the jury, that partners are general agents for each other, in all that relates to the partnership business, and that if the defendants were partners at the time, the act of either, relating to this compromise of the partnership debts, whether fair or fraudulent, bound both, as if both had known and advised it.

The defendants also contended, that by the terms of the con-

tract, relative to the compromise, in order to render the defendants jointly liable, there must have been a joint secreting of property ; and requested the court so to instruct the jury, which the court declined to do, but said to them, that under this contract, the act of one partner, within the proper scope of the partnership business, was the act of both.

The defendants further requested the court to rule, that if the plaintiff would set aside the contract of settlement upon the ground of fraud, he must before he could maintain an action of assumpsit on the original contract, return, or offer to return to the defendants, what had been received from them on the settlement, or place them in the same situation they were in before the settlement; but the court declined so to rule.

The defendants excepted to the several rulings of the court, and to the instructions given to the jury.

The jury returned a verdict in favor of the plaintiff, which the defendants moved to set aside, by reason of said exceptions. They also moved in arrest of judgment, because, as they contended, there are two distinct causes of action, and the verdict being a general one, cannot be applied to both, or to either of the original specifications or the amendment of the same ; and because the amount of damages assessed in the verdict, is greater than the amount claimed in the amendment.

*Hobbs,* and *Sanborn,* with whom were *Wells,* and *Bell,* for the defendants.

When there is an agreement, that a promissory note shall be taken in discharge of a previous existing debt, such debt is discharged by the note. *Jaffrey* v. *Cornish,* 10 N. H. Rep., 505. The giving of a new note, is equivalent to the payment of a former one. *Huse* v. *Alexander,* 2 Met. Rep., 157 ; *Cornwallis* v. *Gould,* 4 Pick. Rep., 444.

The new note being received as payment of the notes declared on, and for a sum other than the original notes, and other than was due the plaintiff, in his right, introduced an entirely new cause of action, and the court had no authority to allow the amendment. *Merrill* v. *Rand,* 12 N. H. Rep., 74 ; *Butter-*

*field* v. *Haverhill,* 3 N. H. Rep., 201 ; *Goddard* v. *Perkins,* 9 N. H.-Rep., 488. Besides, the specification is not sufficiently specific. *Babcock* v. *Thompson,* 3 Pick. Rep., 446.

The written contract ought not to have been admitted to show a right of action in Pierce *alone,* against the defendants. 1 Chitty's Pl., 13 ; 2 Greenl. Ev., § 110.

If the parties had made no express contract, as to their respective rights and liabilities, probably the law would have implied, that in the event of fraud on the part of the defendants, each of their creditors might have his several action against them for the balance of his demand ; but the parties did make an express contract, defining the remedies to be had against the defendants in case of fraud. An implied promise exists only in the absence of an express one. Chitty on Contracts, 25 ; 2 Greenl. Ev., § 103. The creditors of the defendants, having accepted their undertaking, are bound by it ; and the rights of the creditors, and the liabilities of the defendants, are to be looked for only in the written contract.

Again, the contract was made with Pierce, Amidown, and Howe, and an action upon it should be brought in their joint names. They alone have the legal title, and they would hold the amount recovered, as trustees for the other creditors. The contract, then, disclosing no right of action in Pierce alone, should not have been received in evidence, for him to sustain an action in his name.

But if the express contract does not supersede all implied undertakings, if the plaintiff is entitled to his sole action against the defendants, then we contend, that he cannot bring this action, without first offering to return to the defendants the thirty-three and one-third per cent. of his claim, which he has received of them. If A. enters into a contract with B., and in pursuance thereof, receives money, or other property of B., and the contract is avoided by B.'s fraud, A. may then keep the money, or property, thereby affirming the contract, and bring his action for damages against B., or he may disaffirm it (in which case he must of course, return the money, or property,) and bring his action for the original consideration furnished by him. *Campbell* v. *Fleming,* 1 Ad. & Ellis, 40 ; *Kimball* v. *Cunningham,*

4 Mass. Rep., 502; 2 Kent's Com., 480; *Barton* v. *Loring*, 5 Greenl. Rep., 30.

The evidence of Quimby's declaration as to the mortgage of Wood's separate property, should not have been received as against Wood. The rule is, that the declarations of a party to a suit, to be admissible against a co-party, must relate to something in which the parties have a joint interest. 1 Greenl. Ev., § § 174, 176; 2 Stark. Ev., 44; *Smith* v. *Vincent*, 15 Conn. Rep., 1; *Jaggers* v. *Binnings*, 1 Stark. Rep., 64; Story Part., § 453. Quimby was not even a part owner of the property, to which his declaration referred.

Enoch Wood's deposition should not have been received at that stage of the trial. The question was, whether Wood had committed fraud. Quimby's declaration went to show that he had, in the matter of the mortgage. Hill, the witness of the defendants, testified that the mortgage was *bonâ fidé*, and Enoch Wood's deposition does not contradict him at all, except by implication. The deposition was evidence in chief, and ought not to have been received after the plaintiff had put in his case. 1 Greenl. Ev., §.74.

*R. Eastman*, and *Christie*, for the plaintiff.

1. The original declaration was consistent with, and broad enough, to embrace and cover the amended specification, and the declaration required no amendment to do so. The specification is a mere notice to the defendant of what is intended to be proved and claimed. But the amendment allowed, was for the same cause of action set out in the declaration and specification first furnished. The object of this suit at its commencement was, and always has been, to recover sixty-six and two-thirds per cent. of the amount of the original debt. The second note only made the same debt due on demand, which by the first notes, were due on time. The original count in the declaration was for money had and received, and was not amended; only the particulars of the plaintiffs claim under it, and this was allowed upon terms. The ruling of the court in allowing the amendment, is fully sustained by the authorities of this State. *Stevenson* v. *Mudgett*,

10 N. H. Rep., 338 ; *Merrill* v. *Russell*, 12 N. H. Rep., 74 ; *Burnham* v. *Spooner*, 10 N. H. Rep., 165 ; *Elliott* v. *Sleeper*, 2 Do., 525 ; *Bank* v. *Willard*, 10 Do., 210 ; *Williams* v. *Little*, 12 Do., 31 ; *Wright* v. *C. W. Factory*, 1 Do., 281.

Again, when this action was brought, the original [notes had all become due and payable ; and if the compromise was avoided by fraud, the plaintiff might well recover the unpaid balance of the original notes in this suit ; the twelve hundred and fifty dollar note having been given up at the time of the compromise. As to the form of the amendment, it is as specific as the nature of the case would admit.

2. This action was not founded upon the paper executed and sworn to by the defendants, at the time of the compromise, nor was that paper offered in evidence of the contract. The defendants alleged a compromise, by which the claims of the plaintiff were discharged. The plaintiff replied that the alleged compromise was based upon, and induced by, certain representations made by the defendants, relative to the amount and situation of their property ; which representations were false, and were known by the defendants to be so, at the time they were made ; and this paper was introduced as evidence of those representations, to lay the foundation of proofs of fraud on the part of the defendants, that the compromise might be avoided. It is merely a certificate of certain facts and recital of the grounds of the settlement then made. It is sworn to, and subscribed, as a certificate and declaration, and in the case is called a contract, merely to designate the paper, which does not purport to be a contract. The paper being introduced, the plaintiff, by other testimony, proceded to show that these statements and representations were fraudulent and false, knowingly and wilfully so.

3. Quimby's admissions or declarations as to the character of the mortgage of Wood to Hill, were rightly received. That they were admissible to avoid the compromise, so far as Quimby was concerned, seems too clear to be doubted. When we compare them with the representations signed and sworn to by him, they clearly show fraud and falsehood in him, in relation to matter material to the compromise. But they were also admissible

as against Wood, another party to the record, as well as a partner of Quimby, to prove fraud and falsehood in him, in relation to the compromise. 1 Greenl. Ev., § § 172, 174 ; 2 Douglass, 652 ; *Perham* v. *Raynal*, 2 Bing., 306 ; *Burleigh* v. *Scott*, 8 B. & C., 36 ; *Wyatt* v. *Hadson*, 8 Bing., 309 ; 1 Barn. & A., 467 ; 1 Stark. Rep., 488.

The acknowledgement or admission of any fact, by one partner, material as evidence in any suit, will be deemed the admission of all the partners. Story Part., § 107. The principle extends further, so as to bind the firm for the frauds committed by one partner, in the course of the transactions and business of the partnership. Story Part., § 161.

The authorities cited by the defendants do not sustain their position, but the contrary.

4. What the plaintiff and Howe said they wanted the writing for, is not made a point in the defendants' brief. The evidence introduced is not reported. It might have been, and probably was, of no importance.

5. Enoch Wood's deposition was admissible. It tended strongly to rebut and disprove the testimony of Hill. It also tended to show fraud, and was clearly admissible at some time. And the stage of the trial, when it should be admitted, seems to be at the discretion of the court who tried the case. We say further that there is no such rule of practice as the objection implies, and the court might in their discretion waive it, if there were.

6. If the amended specification was properly admitted, there is no ground for the exception to the first branch of the charge.

The other instructions given to the jury are fully sustained by authority. Story Part., § 107 ; *Rapp* v. *Latham & a.*, 2 Barn. & A. 795 ; *Lucas* v. *De La Cour*, 1 Maule & Selw., 250 ; *Willet* v. *Chambers*, Cowper, 814 ; 12 East. 317.

7. We think there is no foundation for the motion in arrest of judgment. If there was, a *remittitur* has removed it.

EASTMAN, J. The powers of the court in regard to amendments are very ample. "Amendments in matters of substance

may be permitted in any action, in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, but the rights of third persons shall not be affected thereby." Rev. Stat., ch. 186, § 11. And by the rules of the court, any amendment may be made, which is consistent with the original declaration and for the same cause of action.

The count in the plaintiff's declaration, was for money had and received. Under such a count, the plaintiff could have specified either the three notes, or the new one given for $1250. All were signed by the defendants, and all had matured at the time of the commencement of this action; and whichever the plaintiff might include in his specification, if he could satisfy the court and jury that they were due, he might recover. But having set forth the three original notes in his specification, can he be permitted to amend it by inserting a claim for the balance due on the $1250 note?

The foundation of the plaintiff's claim, was, we presume from the case, for an indebtedness for goods sold to the defendants. That indebtedness was put into the form of three promissory notes, payable on time, and afterwards into one note, payable on demand. It was then compromised by the payment of one-third of the debt, and this action is for the recovery of the remaining, two-thirds, based upon an alleged fraud in the compromise. Now, whether the specification contain the three notes or the new note, the ground of claim is not changed. The cause of action remains the same; and both by the Revised Statutes, and the practice in the courts of this State prior to their passage, can the amendment be made. A declaration upon a promissory note may be amended by adding a count for the goods sold and delivered, for which the note was given. *Burnham* v. *Spooner*, 10 N. H. Rep., 165. And the rule laid down in other cases, is quite as broad. *Stevenson* v. *Mudgett*, 10 N. H. Rep., 338; *Elliott* v. *Abbott*, 12 N. H. Rep., 549.

Had this been an application to amend the declaration, we entertain no doubt, that the amendment would have been admissible; and we do not regard the rules governing the amendment of specifications, as more stringent than those applicable to the amendment of a declaration.

Pierce *v.* Wood.

The next exception taken, was to the admission as evidence, of what is termed the contract. It will be borne in mind, that the action is for money had and received. The plaintiff claims, that the defendants are indebted to him, in a sum exceeding seven hundred dollars, which is honestly his due, and which, they, in good conscience, ought to pay. The claim is founded upon an alleged fraud in the compromise, and the action for money had and received, is the proper form. Were the action brought upon the writing itself, the defendants' exceptions might be good. As to that, however, we need not inquire, since the paper was offered, not as the foundation of the action, but as a piece of evidence to show the alleged fraud. If it could itself, have been made the foundation of an action, it does not, therefore, follow, that it may not be a competent piece of evidence tending to establish facts involved in another action. If the settlement was fraudulent on the part of the defendants, it was void, and the plaintiffs would be entitled to recover ; and had not the facts stated in the contract been reduced to writing, it is doubted whether the exception would have been taken, had the attempt been made to prove them by parol. The paper being offered with the view with which it was, as a piece of evidence to show the fraud, and not as evidence of a contract, it would certainly seem that the facts stated cannot be less weighty, or more exceptionable, because the plaintiff took the precaution to have them reduced to writing. The ruling of the court, admitting the evidence, was correct.

The statements of Quimby, one of the partners, and one of the defendants, made while the negotiations for a compromise were going on, and tending to show fraud, were admissible. The declarations of one of two partners, joint defendants, made after a dissolution of the firm, are evidence against both, as to any contract made before dissolution, whether the other partner is present or not. *Mann* v. *Locke & al.*, 11 N. H. Rep., 246. The doctrine of this case, would tend strongly to the admission of the evidence. But Story, in his work on partnership, seems to place the matter beyond controversy. It is there laid down, that the representation of any fact, or a misrepresentation of

any fact, made in any partnership transaction by one partner, will bind the firm. It is also said, that the principle extends further, so as to bind the firm for the frauds committed by one partner in the course of the transactions and business of the partnership, even when the other partners have not the slightest connection with, or knowledge of, or participation in, the fraud. Story Part., § § 107, 108.

At the time the compromise was effected, the defendants were in partnership. The debts to be settled, were partnership debts. The compromise was for the benefit of the firm. It was an act done by and for the firm, and the defendants were jointly interested in it. It was strictly partnership business. The property which was the subject of the conversation, was part of that which was conveyed to the creditors to effect the settlement, and the defendants both stipulated, that any fraudulent concealment should vitiate the compromise. Their attention was particularly called to the matter, by being reduced to writing, and the statements of either of them, as to the property conveyed during this negotiation, and tending to show fraud as to the settlement, were, we think, clearly admissible, for the purpose of rendering void the compromise.

Upon general principles, the ruling upon the next point was wrong. What a party to a suit says himself, cannot ordinarily be evidence in his favor. But this point in the case, appears to be entirely passed over in the defendants argument; and hence we infer, that the evidence proved to be immaterial, or was of that character, when brought out, that no exception could be sustained against it. The statements, to which the witness testified, are not reported in the case, and from the brief allusion to the matter, we judge that the evidence was immaterial. A new trial will not be granted, on account of the admission of immaterial evidence. *Hamblett* v. *Hamblett*, 6 N. H. Rep., 333; *Clement* v. *Brooks*, 13 N. H. Rep., 92.

Whether the deposition of Enoch Wood was in its character strictly rebutting or not, a new trial cannot be granted on account of its reception. We have no established rule, which requires a party to introduce all his evidence, except such as is

properly rebutting, before he rests his case. It is recommended by the court, but not insisted upon; and evidence, which is not strictly rebutting, may, in the discretion of the court who try the cause, be received at a subsequent stage of the trial. The better practice, no doubt, is for each party to put in his whole case before stopping. A case that is properly prepared can ordinarily be tried in this way, more understandingly, and with considerable more dispatch, than by introducing the evidence by instalments.

The exception and request of the defendants as to the first position in the charge of the court, undoubtedly went upon the ground that the amendment to the specification was inadmissible. Upon that assumption, the exception would be well taken; but the amendment having been allowed, the instruction was unexceptionable. The effect of the instruction, considered in connection with the converse of the proposition embraced in it, would be, that if the compromise was avoided by fraud, then a recovery could be had, either upon the old notes, or the new one; and whether upon the latter or former, would depend upon the question whether the new one was received in discharge of the former ones.

The questions embraced in the two next paragraphs of the case were in effect decided when considering the admissibility of the declarations of Quimby, as competent evidence to show fraud. Partners are not agents of each other, in ordinary transactions, for the *purpose* of committing frauds, but whatever is done by either in the general partnership business, within the scope of that business, whether it be honestly, or dishonestly transacted, must govern the firm. *Locke* v. *Stearns*, 1 Met. Rep., 560. And if, in effecting the compromise, either partner did any act, or made any representations embraced within the partnership business, for the purpose of carrying out the agreement, it was admissible, whether fair or fraudulent. The course taken by the court, and the instructions given, were we think, correct.

We also think, that the refusal of the court to rule as requested upon the next point, was correct. The defendants requested the court to rule, that if the plaintiff would set aside the con-

tract of settlement upon the ground of fraud, he must, before he could maintain an action of assumpsit on the original contract, return, or offer to return to the defendants what had been received from them on the settlement, or place them in the same situation they were in before the settlement. This the court declined to do.

The doctrine of the rescission of contracts will hardly apply to a case of this kind. The whole foundation of the plaintiff's right to recover rested upon the question of fraud. If fraud was made out, then the plaintiff could recover, otherwise not; and the whole trial proceeded upon that ground. Fraud being established, the compromise became void, and the plaintiff's entire debt would at once be revived, and a clear right of action exist in his favor. And it appears to us, that it would be a singular doctrine, to hold that before an action can be maintained to recover the balance, that portion of the plaintiff's demands which had been paid, must first be refunded, — that before he can institute a suit for the amount out of which he has been defrauded, he must first repay that which was honestly his due, and which, so far as he was concerned, he has honestly received. Such a rule would be offering a premium for fraud; and in most cases of the kind, a plaintiff might better retain the per cent. which he has received, than relinquish that, for the uncertainty of recovering the whole.

The objection to the verdict can be obviated by a *remittitur*. The damages assessed were computed by the three notes, or the new one. The new note embraces more than was actually due; and if the verdict is for a larger sum than the sixty-six and two-thirds per cent., it can easily be ascertained by arithmetical computation, and the proper correction made. *Hoit* v. *Moulton*, 2 N. H. Rep., 323 ; *Sanborn* v. *Emerson*, 12 N. H. Rep., 58. With the understanding that a *remittitur* shall be entered for the excess, if any be found, there may be,

*Judgment on the Verdict.*